# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| Custom Game Design Software, Inc. | § § | |
| Plaintiff | § § § | |
| vs. | § § | Case No. |
| Monir Katob, Individually and d/b/a Mo's Vending, Mahmoud Al-shahab and Asif Ali, | § § § § § | |
| Defendants. | | |

## PLAINTIFF'S ORIGINAL COMPLAINT, REQUEST FOR TEMPORARY RESTRAINING ORDER AND FOR PRELIMINARY INJUNCTION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff Custom Game Design Software, Inc., and files this its original complaint against Defendants Monir Katob, individually and d/b/a Mo's Vending, Mahmoud Al-shahab, and Asif Ali, and in support thereof would show as follows:

## PARTIES

1. Plaintiff Custom Game Design Software, Inc. ("CGD") is a Texas corporation with its principal place of business at 801 E Plano Parkway, Suite 120, Plano, TX 75074.

2. Defendant Monir Katob ("Katob") is an individual who may be served at his place of business, Mo's Vending, at 3407 NE Loop 323, Tyler, TX 75708, at his residence at 17705 Sunshine Lane, Troup, TX 75789, or wherever he may be found. Katob does business as Mo's Vending, and Mo's Vending may be served with process by serving Katob.

1

3. Defendant Mahmoud Al-shahab ("Al-shahab") is an individual who may be served at his place of business, Rite Track #11, 501 US Hwy 67, Naples, TX 75568 or wherever he may be found.

4. Defendant Asif Ali ("Ali") is an individual who may be served at his place of business, Rite Track #11, 501 US Hwy 67, Naples, TX 75568 or wherever he may be found.

5. All Defendants are collectively referred to as "Defendants."

## JURISDICTION AND VENUE

6. This action arises under the federal statutes protecting trade secrets and trademarks and their Texas state law counterpart. This Court has subject matter jurisdiction pursuant to 18 U.S.C. § 1836(c), 15 U.S.C. § 1116 and 1121, and 28 U.S.C. § 1367(a).

7. This Court has personal jurisdiction over Defendants because all of the individual Defendants reside in the Eastern District of Texas.

8. This court is a proper venue for this action under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to Plaintiff's claims occurred in this district and division. Further, Defendants Al-shahab and Ali work in the Marshall Division, and the charity which has been deprived of revenues as a result of the Defendant's activity, Hope for Housing, Inc., is likewise located in the Marshall Division of the Eastern District of Texas.

## FACTUAL BACKGROUND

### Sweepstakes Games

9. Plaintiff Custom Game Design Software, Inc. is a software designer which creates numerous programs. Some of them are what is generally referred to as "charity sweepstakes games." Plaintiff CGD's charity sweepstakes game software  (hereafter

"CGD software") include the following titles: Cinderella, The Finer Things, Lucky Puppy 2, Luck of the Irish, Super Slot Man, Jim Miner & Jewel Digger, Son of a Lucky Puppy, Hot Luck Keno, Scorchin' Sevens, Slots & Stripes, Lucky Diamonds, Reel Pirates, Pirate's Bounty, Time Treasures, Olympic Treasures, Black Top Victory, Whirl of Winnings, Arctic Alley, Fast Ball Keno, Slots of Sevens, Precious Diamonds, Lucky Ball Keno, and Good Luck Keno. These games are either trademarked or pending trademarks.

10. "Charity Sweepstakes Games" are sweepstakes games designed to benefit one or more charities. A person makes a donation and receives sweepstakes entries. A person may also request a free entry every day. A portion of the proceeds goes to a qualified charity. The name of the charity is prominently displayed on the gaming terminal.

11. Custom Game Design contracted with distributors to place licensed copies of its software in locations throughout East Texas. Those distributors, in turn, contracted with sub – distributors such as Defendant Katob to actually install both software and hardware at numerous locations throughout East Texas.

12. CGD loads its software on a master hard drive which is used by the distributors to place the software in the field. The system is composed of a Server, a Cashier Terminal, and multiple Game Terminals. Each Game Terminal allows for all the above mentioned games to be played.

### Creation of Pirated Copies of CGD Software

13. In the spring of 2016, Defendant Monir Katob, through his company Mo's Vending, worked with Defendant Mahmoud Al-shahab and Defendant Asif Ali to break the

security on Custom Game Design software which Mo's Vending had been installing in order to generate unlicensed copies ("pirated software").

14. Defendant Al-shahab broke the security at Defendant Katob's request.

15. The Mo's Vending Defendants then worked to install the pirated software at both previously licensed locations and new locations, referred to collectively as "rogue locations."

16. On information and belief, the following are rogue locations, which are or have been using the pirated software:

   a. 271 Gaming Center, 17100 US 271, Tyler, TX;
   b. Buffalo Sweeps, 1520 S. Buffalo, Canton, TX;
   c. Corner Market—Tyler, 1321 Lake Placid Rd, Tyler, TX;
   d. Cross Country 64, 16117 Hwy 64 E, Tyler, TX;
   e. Kwik Shop #2, 704 N Frankston Hwy, Frankston, TX;
   f. Green Top # 3, 1203 N Kilgore Dr., Henderson, TX;
   g. Hot Spot # 6, 1707 E Front St., Tyler, TX;
   h. King Mart #2, 8175 US HWY 69 N, Tyler, TX;
   i. King Mart #3, 303 S Main St., Winona, TX;
   j. Meher, 1301 West SW Loop 323, Tyler, TX;
   k. Midway Food Mart, 533 S Broadway Ave., Tyler, TX;
   l. Quickers, 2715 NW Loop 323, Tyler, TX;
   m. Sam's Food Mart, 13843 Hwy 64, Ben Wheeler, TX;
   n. Silver Sweeps #2, 319 Avenue N, San Angelo, TX;
   o. Silver Sweeps, 1642 S Chadburn, San Angelo, TX;
   p. Speed Track 2, 2615 E Commerce St., Tyler, TX;
   q. Star Mart # 2, 2030 W Gentry Pkwy, Tyler, TX;
   r. Super Stop #14, 21126 Interstate 20 W, Lindale, TX;
   s. Texaco Corner, 2700 E. 5th Street, Tyler, TX;
   t. Thompson 2, 351 S. Glennwood, Tyler, TX;
   u. Troup Gaming Center, 163 W Duval St., Troup, TX;

    v.  Wally's Grocery, 302 W. Martin L. King, Tyler, TX;

    w.  Wildcat Mart, 1036 FM 346, Whitehouse, TX;

    x.  Willfull Crossing, 3842 South FM, Hawkins, TX;

    y.  Bullard Exxon , 115 S Houston, Bullard, TX;

    z.  Hot spot, 1608 Front St., Tyler, TX;

    aa.  Game Room, 12573 State Hwy 31 West, Tyler, TX;

    bb.  Speed Trac 2, 682 S SE Loop 323, TX;

    cc.  Express Food Mart, 2002 East Gentry Pkwy, Tyler, TX;

    dd.  Super Sak #6, 13858 HWY 64 West, Ben Wwheeler, TX; and

    ee.  Bunny's 14, 638 E NE Loop 323, Tyler, TX.

17. Katob did not make the required royalty payments for use of the software at the rogue locations to the plaintiff, the distributor, or the Marshall Division charity.

## CAUSES OF ACTION

### Breach of the Defend Trade Secrets Act (Federal Law)

18. The CGD software which contained the sweepstakes games constituted a "trade secret" as that term is defined in 18 U.S.C. § 1839(4) and is related to a product or service used in, or intended for use in, interstate or foreign commerce.

19. The Defendants misappropriated the CGD software as that term is defined in 18 U.S.C. § 1839(5) by breaking the security on the CGD software, creating multiple unlicensed copies, and selling and marketing those copies to the rogue locations.

20. The Defendants' breach resulted in actual damages to Plaintiff in the form of actual loss caused by Mo Vending's failure to comply with the contractual provisions requiring payments to be made for use of the CGD software.

21. The Defendants were also unjustly enriched as a result of their creation and marketing of the pirated software, in that they retained the sums that were required to be paid to Plaintiff, the distributor and the charity.

22. Plaintiff is entitled under 18 U.S.C. § 1836(3)(B) to recover its (a) damages for actual loss caused by the misappropriation of the trade secret; (b) damages for unjust enrichment caused by the misappropriation of the trade secret; and/or (c) damages measured by imposition of liability for a reasonable royalty for the misappropriator's unauthorized disclosure and use of the trade secret.

23. In light of the Defendants' conduct, this Court is authorized by 18 U.S.C. § 1836(3)(A) to grant an injunction to prevent any or further actual or threatened misappropriation as described above on such terms as the court deems reasonable.

24. The Defendants' actions in misappropriating Plaintiff's trade secret were willful and malicious, entitling Plaintiff to recovery of exemplary damages under 18 U.S.C. § 1836(3)(C).

## Misappropriation of Trade Secrets (State Law)

25. The foregoing facts and allegations are incorporated herein by reference.

26. Under Tex. Civ. Prac. & Rem. Code § 134A.002 and 134A.004, Defendants have misappropriated and continue to misappropriate Plaintiff's trade secrets. The CGD software which contained the sweepstakes games constituted a "trade secret" as that term is defined in Tex. Civ. Prac. & Rem. Code § 134A.002(6).

27. The Defendants misappropriated the CGD software as that term is defined in Tex. Civ. Prac. & Rem. Code § 134A.002(3) by breaking the security on the CGD software, creating multiple unlicensed copies, and selling and marketing those copies to the rogue locations.

28. The Defendants' breach resulted in actual damages to the plaintiff in the form of actual loss caused by Mo Vending's failure to comply with the contractual provisions requiring payments to be made for use of the CGD software.

29. The Defendants were also unjustly enriched as a result of their creation and marketing of the pirated software, in that they retained the sums that were required to be paid to Plaintiff, the distributor and the charity.

30. Plaintiff is entitled under Tex. Civ. Prac. & Rem. Code § 134A.004(a) to recover its (a) damages for actual loss caused by the misappropriation of the trade secret; (b) damages for unjust enrichment caused by the misappropriation of the trade secret; and/or damages measured by imposition of liability for a reasonable royalty for the misappropriator's unauthorized disclosure and use of the trade secret.

31. In light of the Defendants' conduct, this Court is authorized by Tex. Civ. Prac. & Rem. Code § 134A.003 to grant an injunction to prevent any or further actual or threatened misappropriation and to continue the injunction to eliminate commercial advantage that otherwise would be derived from the misappropriation. The Court is further authorized to order, as part of the injunction, future use conditioned upon payment of a reasonable royalty.

32. The Defendants' actions in misappropriating Plaintiff's trade secret were willful and malicious, entitling Plaintiff to recovery of exemplary damages under Tex. Civ. Prac. & Rem. Code § 134A.004(b).

## Trademark Infringement

33. The foregoing facts and allegations are incorporated herein by reference.

34. Under 15 U.S.C. § 1114(1), Defendants have infringed and continue to infringe the Plaintiff's Trademarks: Cinderella, The Finer Things, Lucky Puppy 2, Luck of the Irish, Super Slot Man, Jim Miner & Jewel Digger, Son of a Lucky Puppy, Hot Luck Keno, Scorchin' Sevens, Slots & Stripes, Lucky Diamonds, Reel Pirates, Pirate's Bounty, Time Treasures, Olympic Treasures, Black Top Victory, Whirl of Winnings, Arctic Alley, Fast Ball Keno, Slots of Sevens, Precious Diamonds, Lucky Ball Keno, and Good Luck Keno through their misappropriation of Plaintiff's Charity Sweepstakes Games software.

35. On information and belief, Defendants have known of Plaintiff's trademarks since the date that they misappropriated Plaintiff's Charity Sweepstakes Games software.

36. Under 15 U.S.C. § 1125(a)(1)(A), Defendants' use of Plaintiff's trademarks is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' use of Plaintiff's trademarks by Plaintiff.  Plaintiff is the only valid owner of its trademarks, and Plaintiff has not granted Defendants a license to their trademarks.

37. Plaintiff has missed opportunities to obtain revenue from its trademarks due to Defendants' willful infringement.

38. Plaintiff is entitled under 15 U.S.C. § 1117 to recover (a) Defendants' profits; (b) damages sustained by Plaintiff; and/or (c) costs of the action, including reasonable attorney's fees as this is an exceptional case.

39. In light of the Defendants' conduct, this Court is authorized by 15 U.S.C. § 1116(a) to grant an injunction to prevent any or further actual or threatened infringement as described above on such terms as the court deems reasonable.

40. Defendants' trademark infringement is willful through their knowing misappropriation of Plaintiff's Charity Sweepstakes Games software.

## EXEMPLARY DAMAGES

41. The foregoing facts and allegations are incorporated herein by reference.

42. Defendants' conduct as described above was willful and malicious. Accordingly, pursuant to 18 U.S.C. § 1836(b)(3), 15 U.S.C. § 1114, and Tex. Civ. Prac. & Rem. Code § 134A.004(b), Plaintiff seeks exemplary damages in an amount equal to the statutory maximums.

## REQUEST FOR TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION

43. The Defendants have utilized improper means to obtain CGD's property, and have flagrantly continued to operate and use it for their own financial benefits. As set forth in the Hampe declaration, attached as Exhibit A, the pirated software is highly mobile and *ex parte* relief is sought so that the software cannot continue to be sold or used.

44. In order to preserve the status quo of the subject matter of the litigation and prevent irreparable harm until a hearing can be held on a preliminary injunction, Plaintiff seeks a temporary restraining order enjoining Defendants and all acting in concert with them to cease the creation, distribution, and use in any manner of the CGD software in an unlicensed form, and to preserve in an unaltered form all unlicensed software and all hardware used to implement the unlicensed software.

45. For at least the reasons set forth in Exhibit A, Custom Game Design will suffer irreparable injury if the requested relief is not granted.

46. For at least the reasons set forth in Exhibit A, there is no adequate remedy at law since absent an injunction evidence regarding both the violation of the DTSA, the Trademark

Act, and the Texas Uniform Trade Secrets Act and Plaintiff's trade secret and trademark rights, and the extent of unlicensed activity necessary for calculation of damages could similarly be destroyed.

47. For at least the reasons set forth in Exhibit A, there is a substantial likelihood that Plaintiff will succeed on the merits of its case.

48. For at least the reasons set forth in Exhibit A, the injury that Plaintiff faces outweighs the injury that would be sustained by Defendants as a result of the injunctive relief.

49. The injunctive relief would not adversely affect public policy or the public interest. Specifically, as noted by Congress in passing the DTSA, "trade secret theft, wherever it occurs, harms the companies that own the trade secrets in the employees of the companies." In addition, the public is injured directly because the charity which is statutorily entitled to a portion of the proceeds is not receiving the required proceeds. Further, the entire charity sweepstakes game industry which generates substantial revenues for Texas charities is harmed when purveyors of pirated software use the names of charities to promote activity, then, as here, do not distribute the proceeds to the charities, thus harming both the affected charities and the reputation of the industry.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court to enter judgment in its favor against the Defendants, granting the following relief:

a. An *ex parte* temporary restraining order and temporary injunction, thereafter to be made permanent, that enjoins Defendants, including Defendants' agents, employees, attorneys, representatives, and those persons or entities in active concert or participation with them, from:

1. Using, disclosing, copying, sharing, re-locating, transferring or offering to customers CGD's trade secrets, trademarks, confidential and propriety information, or other information relating to CGD's gaming software, including but not limited to any CGD sweepstakes gaming software, and any computer servers containing CGD software or related software; and

2. Offering, sponsoring, or assisting others in offering or sponsoring any sweepstake promotions that use CGD's software;

b. A judgment that Defendants have:

   i. Misappropriated Plaintiff's trade secrets under 18 U.S.C. §§ 1836 and 1839;

   ii. Misappropriated Plaintiff's trade secrets under Tex. Civ. Prac. & Rem. Code §§ 134A.002 and .004;

   iii. Infringed Plaintiff's trademarks and trademark rights under 15 U.S.C. §§ 1114(1) and 1125;

   iv. Willfully and maliciously misappropriated Plaintiff's trade secrets;

   v. Willfully infringed Plaintiff's trademarks;

c. A judgment disgorging Defendants' profits, up to treble of Plaintiff's damages due to Defendants' infringement, and awarding Plaintiff's costs and attorneys' fees in this action under 15 U.S.C. § 1117;

d. A judgment awarding damages to Plaintiff for actual damages, exemplary damages, attorney's fees, and court costs; and

e. Such other and further relief to which Plaintiff may show itself justly entitled.

Respectfully submitted,

_/s/ Michael C. Smith_
MICHAEL C. SMITH
SIEBMAN, BURG, PHILLIPS & SMITH, LLP
Texas Bar No. 18650410
113 East Austin Street
Marshall, Texas 75670
(903)938-8900 office
(972)767-4620 fax
michaelsmith@siebman.com

Robert E. Aldrich, Jr.
State Bar No. 00984100
raldrich@aldrichpllc.com
ALDRICH PLLC
1130 Fort Worth Club Tower
777 Taylor Street
Fort Worth, Texas 76102
Telephone: (817) 336-5601
Telecopier: (817) 336-5297


**ATTORNEYS FOR PLAINTIFF
CUSTOM GAME DESIGN SOFTWARE, INC.**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) this the 29th day of July, 2016. Any other counsel of record will be served by facsimile transmission and/or first class mail.

Michael C. Smith